TABB &c. COMPANY v. GELZER.

1. ATTACHMENT—IRREGULARITY.—An attachment was not irregularly issued where the affidavit upon which the warrant was based set forth plaintiff's cause of action and affiant's belief that defendant was disposing of his property with intent to defraud his creditors, as shown by his executing mortgages on his stock of goods in excess of their value, his evasion of explanation, and his admission that two of the mortgages were for more than the debts intended to be secured; and by the fact that defendant was carrying on his business without profit and depleting his stock, from which alone plaintiff can realize their debt.

2. IBID.—IBID.—MORTGAGES.—A chattel mortgage, after condition broken, will be regarded as an assignment or disposition of the property covered thereby, within the meaning of the attachment laws, and a proper ground for an attachment if executed with fraudulent intent.

3. IBID.—IMPROVIDENCE.—The findings of fact of the Circuit Court in declining to vacate an attachment on the alleged ground that it had been improvidently issued, approved; and *doubted* whether this court can review such findings.

Before WATTS, J., York, April, 1894.

This was an action by the Tabb & Jenkins Hardware Company against John Gelzer, commenced February 6, 1894. The affidavit upon which the clerk of court issued the warrant of attachment was as follows:

"Personally appeared Charles T. Jenkins, and made oath that he is the secretary and treasurer of the Tabb & Jenkins Hardware Company, a corporation duly incorporated under

the laws of Maryland, with its principal business office in the city of Baltimore, in the State of Maryland, and with power among other things to make contracts, and to sue and be sued.

"Second. That four separate causes of action exist in favor of the plaintiff and against the defendant, arising as follows: (1) On account of the certain promissory note made by the defendant to the plaintiff on the    day of    , in the sum of two hundred dollars, due and payable on the 27th day of December, 1893, besides interest thereon from maturity, and protest fees in the sum of $2.25. (2) On account of the certain promissory note made and delivered by the defendant to the plaintiff on the 26th day of October, 1893, due and payable on the 15th day of January, 1894, in the sum of one hundred and thirty-six and 35–100 dollars, besides interest thereon after maturity, and protest fees in the sum of $2.25. (3) On account of the certain promissory note made and delivered by the defendant to the plaintiff on the 8th day of November, 1893, in the sum of one hundred and one 40–100 dollars, due and payable on the 15th day of January, 1894, besides interest thereon after maturity, and protest fees in the sum of $2.75. (4) On account of the certain promissory note made and delivered by the defendant to the plaintiff on the 4th day of December, 1893, in the sum of one hundred and fifty-three and 7–100 dollars, due and payable on the 25th day of January, 1894, besides interest thereon after maturity. That no part of the said notes above mentioned, either of principal or interest, has been paid, except $1.68 credited January 22, 1894; but otherwise remains wholly due and unpaid.

"Third. That the defendant, John Gelzer, has already disposed of a very large portion of his property, to wit: more than three thousand dollars, with intent to defeat, delay, hinder, and defraud his creditors, and particularly the plaintiffs, in the collection of the debts to them justly due and owing by the defendant. And has already mortgaged his entire stock of goods for far more than their actual value, as follows, viz: by chattel mortgage to the Savings Bank of Rock Hill, S. C., dated December 2, 1893, in the sum of $3,100, due and payable December 15th, 1893, recorded in the office of the register of

mesne conveyance for York County, on the 5th day of January, 1894. (2) A certain other chattel mortgage to the Savings Bank of Rock Hill, S. C., dated January 21st, 1893, in the sum of $2,000, to secure an alleged note in the sum of $2,000, due and payable one day after date, recorded in the office of the register of mesne conveyance for York County, on the 5th day of January, 1894. (3) A certain other chattel mortgage to J. J. Wescoat, trustee, dated August 17th, 1892, to secure alleged note, due forty days after date, in the sum of seven hundred dollars, but said mortgage was not recorded until the 10th day of January, 1894. (4) A certain other chattel mortgage to John L. Ancrum, dated the 1st day of September, 1892, to secure an alleged indebtedness of $1,500, due and payable , but said mortgage was not recorded until the 31st day of January, 1894. Affiant, after discovering that the aforesaid mortgages were on record, which he did for the first time on the 3d day of February, 1894, called upon the aforesaid John Gelzer, at his place of business in Rock Hill, York County, South Carolina, on the 5th day of February, 1894, and requested the said John Gelzer to make an explanation of the aforesaid mortgages. In response to a direct inquiry on the part of the affiant, as to the nature and amount of the said Gelzer's alleged indebtedness to the Savings Bank of Rock Hill, the said John Gelzer made evasive answer, but, upon being pressed for a direct answer by affiant, he (Gelzer) answered, "Oh! I never did owe the bank anything like $5,100; I, in fact, did not owe the bank more than $3,100," or words to that effect. Affiant then, for a little while, left the store of the said John Gelzer, who, up to that time, had remained mum and noncommunicative as to the mortgages to J. J. Wescoat and John L. Ancrum, in the sum of $700 and $1,500, respectively, but after affiant's return, from fifteen to twenty minutes from the time of his retirement from said store, he asked the said John Gelzer for a direct explanation of the mortgages to those parties. Gelzer replied that he did not owe J. J. Wescoat anything like seven hundred dollars, and not more than three hundred dollars, and would not offer any explanation whatever of the mortgage indebtedness to J. L. Ancrum. And affiant, upon the strength of the

information furnished by the admission of the aforesaid John Gelzer, that he never did owe the Savings Bank of Rock Hill, S. C., more than $3,100, nor J. J. Wescoat, trustee, more than $300, and from the record of the above mentioned mortgages in the office of the register of mesne conveyance for York County, in the State of South Carolina, firmly believes and charges, that the said mortgages to the Savings Bank of Rock Hill, and to J. J. Wescoat, trustee, each being in the sum of $2,000 and $400, respectively, in excess of the amount alleged by the said John Gelzer to have been actually due at the date said mortgages were executed, were really executed for no other purpose than to defeat, delay, hinder, and defraud the creditors of the said John Gelzer, and particularly this plaintiff. Affiant avers further, upon information furnished by the said John Gelzer, that he is continuing his business, and is barely making enough to pay expenses, and is thereby depleting and exhausting the only source from which the plaintiff can possibly realize upon their debt, and if he is suffered to continue, will completely delay and defeat the plaintiff in the collection of his debts, now past due and owing.

"Fourth. That the plaintiffs have commenced an action against the defendant, by delivering to the sheriff of York County the summons and complaint in the foregoing action to be forthwith served."

*Mr. C. E. Spencer,* for appellant.

*Messrs. W. B. McCaw* and *Finley & Brice,* contra.

March 23, 1895.   The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER.   This is an appeal from an order of his honor, Judge Watts, refusing a motion to dissolve an attachment.   The motion was based upon two grounds: 1st. That the attachment was irregularly issued.   2d. That it was improvidently issued.   And the same grounds are urged in support of this appeal.

The first question turns upon the inquiry whether the facts stated in the affidavit upon which the application was based were, if true, sufficient to warrant the clerk in issuing the

attachment. The statute provides that a warrant of attachment may be issued, "whenever it shall appear by affidavit that a cause of action exists against such defendant, * * * and that the defendant * * * has assigned, disposed of, secreted, or is about to assign, dispose of or secrete, any of his or its property," with intent to defraud his creditors. So that the practical inquiry here is whether it appears by the affidavit of Charles T. Jenkins, upon which the clerk issued the warrant of attachment, that a cause of action against the defendant exists, and that such defendant has assigned, disposed of or secreted, or is about to assign, dispose of or secrete, any of his property, with intent to defraud his creditors. Without setting forth here a copy of this affidavit, which, however, should be incorporated in the report of this case, it is sufficient to say that if the statements contained in such affidavit are true, and, for the purposes of this inquiry, they must be so taken, there can be no doubt, and, indeed, it is not questioned, that it does appear from such affidavit that a cause of action against the defendant does exist.

But the contention on the part of the appellant is that the further essential fact that defendant has assigned or disposed of his property *with intent to defraud his creditors*, does not appear from said affidavit. It is stated in the affidavit that the defendant has already disposed of a very large portion of his property with intent to defraud his creditors, particularly the plaintiffs, by giving mortgages, four in number, on his entire stock of goods, for far more than their actual value, the particulars of which, dates, amounts, maturity, and when recorded, are particularly set forth—none of which, except the last, were recorded in due time, which was executed on the 15th of December, 1893, and recorded on the 5th of January, 1894; that as soon as affiant, as one of the officers of the plaintiff company, learned that these mortgages had been executed, to wit: on the 5th of February, 1894, he called upon defendant for an explanation of these large mortgages, covering the great bulk of his property, and was at first met with evasive answers, but finally defendant admitted that two of these mortgages purported to secure the payment of amounts much greater than were really due, and

as to another of the mortgages, purporting to secure the payment of the amount of fifteen hundred dollars, defendant declined to give any information or explanation. And affiant further avers, upon information derived from the defendant himself, "that he is continuing his business, and is barely making enough to pay expenses, and that he is thereby depleting and exhausting the only source from which the plaintiffs can possibly realize upon their debt, and if he is suffered to continue, will completely delay and defeat the plaintiffs in the collection of their debts, now past due and owing." These facts, thus briefly outlined, seem to us sufficient to make it appear to the officer issuing the warrant of attachment that there was a fraudulent intent on the part of the defendant in making these mortgages.

But in the argument here counsel for appellant intimates a doubt whether a mortgage is such an assignment or disposition of property as is contemplated by the attachment law, and though not pressing the argument upon that point, cites the case of *Ivy* v. *Caston*, 21 S. C., 583. It will be seen, however, by reference to page 589, that the court expresly declined to consider the question, because unnecessary to the decision of that case. We must say that we see no reason why a mortgage of personal property after condition broken, may not be regarded as an assignment or disposition of such property, within the purview of the attachment law, as the title to the property then passes to, and is vested in, the mortgagee, and is thereby effectually placed beyond the reach of other creditors; for the manifest object of the attachment law was to reach any case in which a debtor undertakes, fraudulently, to place his property beyond the reach of his creditors.

We do not think there was any error on the part of the Circuit Judge in refusing the motion to dissolve the attachment upon the ground of irregularity.

The only remaining inquiry is whether the attachment was improvidently issued; and this being a question of fact, it is very doubtful, to say the least of it, whether this court can take jurisdiction of such a question, since the case of *Sharp* v. *Palmer*, 31 S. C., 444, notwithstanding what has

been intimated, though not decided, in the previous case of *Claussen* v. *Easterling*, 19 *Id.*, 515. But even if we had the power to review the findings of fact made by the Circuit Judge, we think his findings are sustained by a review of all the testimony in the case.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.